314

ANA MARÍA FERRAO ET AL., Petitioners and Appellees, *v.* RAFAEL DE J. CORDERO, AUDITOR OF PUERTO RICO, ET AL., Respondents and Appellants.

No. 9438. Argued May 1, 1947.—Decided May 19, 1947.

*Luis Negrón Fernández, Acting Attorney General,* and *Carlos Santana Becerra, Assistant Attorney General,* for appellants. *Félix Ochoteco, Jr.,* and *Luis E. Dubón* for appellees.

MR. JUSTICE SNYDER delivered the opinion of the Court.

Act No. 212, Laws of Puerto Rico, 1946, created the Tribunal of the Judicial District of San Juan. Section 13 provides for a stenographer for each judge, classified as director clerk–stenographer. Section 13 also provides that each judge shall appoint his own stenographer. Under § 14 these stenographers hold at the pleasure of the appointing judge.

Act No. 212 was approved on March 26, 1946, effective immediately. In § 15 the Legislature appropriated salaries for these stenographers at the rate of $2,100 per annum until June 30, 1946. Section 15 then provides that the salaries which the officials and employees of the court shall receive after July 1, 1946 shall be those appropriated in the subsequent General Appropriation Acts. The latter was approved by the Legislature for 1946–47 with an item for five stenographers for the judges—C.S.C. Grade Number, U—at $2,100 each, but the Governor reduced this figure to $1,500 each. Act No. 514, Laws of Puerto Rico, 1946, p. 1562.

The five employees who have held these posts since they were created filed a petition for mandamus to compel the Auditor and the Treasurer to pay them at the rate of $2,100 rather than $1,500 per annum during the fiscal year 1946–1947. The district court entered judgment in favor of the petitioners, and the Auditor and Treasurer appealed.

██ This case does not involve paragraph 13 of § 34 of the Organic Act, 48 U.S.C.A. § 838, which prohibits reduction by the Legislature of the salary of a public officer under certain circumstances. See *León v. Fitzsimmons*, 61 P.R.R. 340, affirmed in *Fitzsimmons v. León*, 141 F.(2d) 886 (C.C.A. 1st, 1944); *Arjona v. Winship*, 49 P.R.R. 50, affirmed in 87 F.(2d) 205 (C.C.A. 1st, 1937); *Ponsa v. Winship, Governor*, 53 P.R.R. 871. The petitioners are employees rather than public officers. They are therefore not protected by paragraph 13, and their salaries may be reduced by the Legislature in the General Appropriation Act even though their salaries were previously fixed in special Acts creating their positions. *Fitzsimmons v. León, supra*, 141 F.(2d) 886 at 888; *Ugarte v. Auditor of Puerto Rico*, 56 P.R.R. 809; *Soto v. Auditor of Puerto Rico*, 56 P.R.R. 775; *Williams v. United States*, 289 U.S. 553; *O'Donoghue v. United States*, 289 U.S. 516.

However, we are not concerned in this case with the power of the Legislature. Rather our problem is to determine the extent of the item veto power conferred on the Governor by paragraph 1 of § 34 of the Organic Act, 48 U.S.C.A. § 825. On that question it is conceded by the petitioners that if the Legislature fixes the salary of an employee from year to year in a General Appropriation Act, the Governor may reduce it by item veto. See *Fitzsimmons* v. *León, supra; Soto* v. *Auditor of Puerto Rico, supra; Ugarte* v. *Auditor of Puerto Rico, supra; De la Rosa* v. *Winship,* 47 P.R.R. 312.

But a different question arises where the Legislature fixes the salary of an employee in a special Act and thereafter the Legislature, instead of exercising its power to reduce the salary fixed in the special Act, provides for the same salary in the General Appropriation Act. Under those circumstances, according to the first portion of the opinion in the *León* case, the Governor is not authorized under his item veto power to reduce such a salary. We realize that on its facts the *León* case involved a public officer, and not an employee. But the reasoning of the Circuit Court on this point is clearly broad enough to cover employees. That Court said at p. 888:

"In exercising the veto power it is generally said that the executive is exercising a legislative power . . . but it is also said that the power is only a negative, not a positive one. . . . It is a power conditionally to prevent, and in Puerto Rico with respect to appropriation bills, to modify, acts passed by the Legislature but which have not yet become law. It is not the power to enact new legislation or to recall or modify old, and it is a power which must be exercised, if exercised at all, within a limited time. It is a power only to check or restrain legislative action before such action ripens into law. . . .

"It seems to us that to sanction the Governor's action here would be to fly in the face of these principles in that it would permit the Governor in practical effect to amend without limitation as to time and single handed an act, here Act No. 40 of 1929, which had long before become law. As we view it his action if permitted 'would not be negation of an item or items of appropriation by veto but,

in effect, affirmative legislation by executive edict' (*Bengzon* v. *Secretary of Justice*, 299 U.S. 410, 414, 57 S.Ct. 252, 254, 81 L.Ed. 312) and so squarely in conflict with basic constitutional principles. . . . "

We turn to the facts of the instant case. If the salaries of the petitioners were fixed in Act No. 212, the Legislature, as we have seen, could nevertheless validly reduce these salaries in the General Appropriation Act. But that did not occur. Instead the Legislature appropriated the same sum for these salaries in the General Appropriation Act of 1946–47. And under the reasoning of the *León* case where the Legislature fixes salaries of employees in a special Act and thereafter appropriates the same sum for such salaries in the General Appropriation Act, the legislative intent to maintain the salaries at the rate fixed in the special Act cannot be frustrated by the Governor through use of his item veto power to reduce such salaries in the General Appropriation Act.

We thus see that the crucial question to determine here is if the salaries of the petitioners were fixed in Act No. 212. The petitioners contend their salaries were fixed at $2,100 by that Act, on the theory that the Legislature described the position as director clerk-stenographer, which in the Classified Service carries with it a salary of not less than $2,100 a year. This argument has certain weaknesses: (1) these positions are not within the Classified Civil Service; (2) the 1946–47 General Appropriation Act lists these posts as Unclassified; and (3) the same General Appropriation Act seems not to regard a position which is described as director clerk-stenographer but is outside the Classified Civil Service as calling automatically for $2,100, since it provides at p. 1560 for five stenographers in exactly the same category for the Justices of the Supreme Court at $1,800 instead of $2,100 per annum.

But, apart from these considerations, there is an even more serious difficulty in the position of the petitioners. Sec-

318

tion 15 fixes these salaries at $2,100 only until July 1, 1946. It then provides that after that date the salaries for these positions shall be those appropriated in subsequent General Appropriation Acts. The Legislature therefore did not undertake to fix these salaries in Act No. 212, but provided that, after July 1, 1946, they should be fixed in the General Appropriation Act. Consequently, the Legislature by the terms of Act No. 212 left intact the power of the Governor to reduce these salaries, when they were thereafter fixed by the Legislature in the General Appropriation Act, under his item veto exercised pursuant to paragraph 1 of § 34 of the Organic Act. In so acting the Governor was not recalling or modifying old legislation as embodied in Act No. 212. He was restraining legislative action, found in the proposed General Appropriation Act, before it ripened into law.

The judgment of the district court will be reversed and a new judgment entered dismissing the petition for mandamus.